IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH A. COLE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FEDERAL EXPRESS CORP., | : | NO. 06-3485 |
| | : | |
| Defendant. | : | |

## MEMORANDUM RE SUMMARY JUDGMENT

**Baylson, J.**                                                                                          **September 19, 2008**

      In this employment dispute, Plaintiff Elizabeth Cole ("Ms. Cole" or "Plaintiff") alleges that her former employer, Defendant Federal Express Corporation ("FedEx" or "Defendant"), permitted a hostile work environment because Ms. Cole was sexually assaulted and retaliated against for reporting the assault. Ms. Cole also asserts state law claims for negligent supervision, intentional/negligent infliction of emotional distress, and assault and battery. FedEx has filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c); which will be granted in part and denied in part.

**I.     Factual Background**

      Ms. Cole began working at FedEx's Lancaster Station, in Lancaster, Pennsylvania, in 2002. She initially held the position of Customer Service Agent (CSA), and at the time of the alleged harassment and retaliation held the positions of Senior CSA and Dangerous Goods agent.

      **A.     Incident of March 26, 2005**

According to the Complaint and summary judgment papers, on March 26, 2005, Mr. Alberto Vargas, a FedEx employee who had been recently promoted to manager, grabbed Ms. Cole, held her breasts and grinded his body against hers until he ejaculated. Ms. Cole also asserts that Mr. Vargas subsequently knelt down and placed his head in her vaginal area. According to Ms. Cole, Mr. Vargas was the on-duty manager of the Lancaster Station when he sexually assaulted her.

After the alleged assault, Ms. Cole states that she was in shock and kept working through the day, which was a Saturday. She reported the incident to two managers at the end of the day, including Mr. Gene Messier, the Operations Manager for Lancaster Station. The following Monday, Ms. Cole reported the incident to Human Resources ("HR").[1] That same Monday, FedEx placed Mr. Vargas on suspension, pending an investigation of Ms. Cole's allegations. On June 13, 2008, after investigating Ms. Cole's allegations, FedEx terminated Mr. Vargas.[2]

**B.    Prior Incidents**

Ms. Cole alleges that Mr. Varga's harassing behavior began in the fall or winter of 2003, when he kissed Ms. Cole on the neck against her will. Ms. Cole reported the unwelcome kiss to the Lancaster Station manager and to Mr. Gene Messier, who was in charge of the office that

---

[1] Ms. Cole also reported the incident to the police.

[2] After his termination, Mr. Vargas filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging that he was discriminated against because of his national origin. According to Ms. Cole, FedEx successfully rebutted Mr. Vargas' complaint with the legitimate business reason that he was fired because he sexually harassed Ms. Cole in violation of FedEx's anti-harassment policy.

-2-

day.³  Ms. Cole states that she informed Mr. Vargas that the kiss was unwelcome and warned him that she would report him to management if he persisted in such behavior.

Ms. Cole asserts generally that Mr. Vargas continued to harass her by occasional verbal comments, but that she did not report any incidents between the uninvited kiss of the fall/winter of 2003 and mid-March, 2005.  In Plaintiff's Counter Statement of Undisputed Facts (Doc. No. 49), Plaintiff does relate a number of other verbal interchanges to her from Mr. Vargas in this approximate two-year time period, consisting mainly of Mr. Vargas making unwanted statements to Plaintiff about her appearance or clothing and Plaintiff's belief that the remarks were inappropriate and uncalled for.  (¶ ¶ 16-18).

      C.     **Retaliation After March 26, 2005**

According to Ms. Cole, after she reported the grinding and ejaculation incident of March 26, 2005, her colleagues retaliated against her, creating an intolerable work environment, which required her to go on medical leave.  The Plaintiff has set forth in some detail her account of her treatment by Defendant in her affidavit, which is Exhibit A to Plaintiff's Counter Statement of Undisputed Facts (Doc. No. 49).  There is deposition testimony indicating that some of Ms. Cole's colleagues ignored her and that one colleague refused to help her with her work.  There is also evidence allowing the inference that Ms. Cole's co-workers circulated information about her to customers and indicating that one customer made the comment, "So you don't sleep with all your customers."  Further, Ms. Cole asserts that she lost time because of stress related to the March 26, 2005 incident, and Senior Manager Roy Belyea placed a note in her file regarding her

---

³ Mr. Messier was subsequently promoted to Operations Manager for Lancaster Station, the position he held on March 26, 2005.

allegedly poor attendance.[4]

### D. Ms. Cole's Termination

Ms. Cole's affidavit sets forth significant details about her reasons for no longer working at Federal Express following the 2005 incident. However, the court will not consider the affidavit to the extent it contradicts Plaintiff's deposition testimony. Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004). She claims that a number of the employees made nasty comments and she was "hated and shunned." She also states that Defendant did nothing to stop the harassment and retaliation, and none of the other employees were disciplined or reprimanded for the statements that Plaintiff considered to have been "hateful." Plaintiff continues that the work conditions were "intolerable and the hostility intensified against me," she had trouble concentrating from all the tension and stress, was refused assistance and business information, and could not do her job. (Pl.'s Aff. ¶ 23). She states that she reported the harassment and retaliation to management, but nothing was done. She left work early and missed work and was not offered a reassignment or any work outside of her current station. She also complains that Defendant did not tell her what happened to the complaint she filed against Mr. Vargas, she did not know if he was coming back, and on June 14, 2005, her doctor placed her on medical leave for anxiety and trauma. She continues to seek professional help and has been unable to secure another job. The medical leave expired one year later, and thus, on June 24, 2006, Ms. Cole was terminated from her employment with FedEx. Ms. Cole asserts that she suffered financial hardship due to the loss of income, cessation of benefits corresponding to her termination, and continues to receive

---

[4] As discussed below, Plaintiff asserts the note is a disciplinary action. However, at oral argument FedEx stated that the note was not a disciplinary action, and Plaintiff alternatively contended that FedEx was laying the groundwork for disciplinary action.

treatment and care for the harm she suffered while working at FedEx.

## II.     Procedural History

On June 15, 2005, Ms. Cole filed charges with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Ms. Cole a right-to-sue letter on May 8, 2006, and she filed a Complaint in this Court on August 7, 2006. FedEx answered the Complaint, and after discovery, moved for summary judgment. FedEx also filed several motions to strike and/or exclude the testimony of certain witnesses Ms. Cole would like to call at trial. On August 21, 2008, the Court held oral argument on the Motion for Summary Judgment as well as the Motions to Exclude evidence. An order issued on August 25, 2008 (Doc. No. 65) denied the Motions to Exclude and granted in part and denied in part the Motion to Strike Plaintiff's Affidavit, which asserted relatively minor incidences between Plaintiff's Deposition and her subsequent Affidavit.

## III.    Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### IV.     Title VII and the Pennsylvania Human Relations Act ("PHRA")

Plaintiff brings suit pursuant to Title VII and the PHRA, both of which make it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1) and 43 PA. CONS. STAT. ANN. § 951. Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986). Title VII and the PHRA also prohibit an employer from retaliating against an employee who has opposed any employment practice unlawful under Title VII or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-

3(a); 43 PA. CONS. STAT. ANN. § 955(d); Durham Life Ins. Co. v. Evans, 166 F.3d 139, 157 (3d Cir. 1999). The analysis under Title VII and the PHRA are identical, as Pennsylvania courts have construed the protections of the two acts interchangeably. Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001).

### A.      Whether Vargas Was a Supervisor

The Parties dispute whether Mr. Vargas was a supervisor on March 26, 2005, the day he allegedly sexually assaulted Ms. Cole, and for the reasons stated in detail on this issue after oral argument, the Court concludes that this dispute presents a genuine issue of material fact which must be resolved by a jury.

Whether Mr. Vargas was a supervisor is quite relevant because, as the Third Circuit has explained:

> under Title VII, much turns on whether the harassers are supervisors or coworkers. If supervisors create the hostile environment, the employer is strictly liable, though an affirmative defense may be available where there is no tangible employment action. When coworkers are the perpetrators, the plaintiff must prove employer liability using traditional agency principles.

Andreoli v. Gates, 482 F.3d 641, 648 (3d Cir. 2007) (internal quotations and citations omitted).

According to the record presently before the Court, viewed in the light most favorable to plaintiff, on the day of the alleged assault, the actual managers of the Lancaster Station were not present and had left Mr. Vargas in charge of the station's operations. Mr. Vargas's deposition testimony indicates that when he was left in charge of the station's operations, he took care of all the operations like a manager did. Although he was not able to hire or fire other employees, a reasonable jury could conclude that Mr. Vargas was in a position of supervisor on March 26, 2005.

Furthermore, by the time of the alleged assault, Mr. Vargas had been offered and had accepted a promotion to manager that was to go into effect on April 1, 2005 (six days after the alleged assault). According to Ms. Cole, Mr. Vargas had already received some of the benefits of being a supervisor, such as having his own office.[5] The Court therefore concludes that a jury must decide whether Mr. Vargas qualifies as a supervisor or a co-worker, as Defendant's liability under Title VII and the PHRA may depend on this fact issue.

### B. Whether the 2003 Incident May Be Considered for the Hostile Work Environment Claim

The Parties dispute whether incidents alleged to have occurred more than 300 days before Ms. Cole filed her administrative complaint may be considered in evaluating Ms. Cole's hostile work environment claim, and the Court concludes that they can not be considered.

Ms. Cole filed her administrative complaint with the PHRC and the EEOC on June 15, 2005, and therefore, according to FedEx, any incidents that may have occurred prior to August 19, 2004, such as the unwelcome kiss in 2003, may not be considered in evaluating her claim.

Under Title VII, a plaintiff must file with the EEOC or its state or local equivalent within 300 days of the alleged actions or practice that constitutes illegal discrimination. West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995); 42 U.S.C. § 2000e-5(e). To bring a suit under the PHRA, Pennsylvania law requires that a plaintiff first file an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1996); 43 Pa. Stat. Ann.. §§ 959(a), 962. Because the federal period is longer, if a claim is untimely under Title VII, it will also be considered untimely under

---

[5] FedEx concedes that even though Mr. Vargas had been suspended, his promotion still went into effect on April 1, 2005, and he began receiving the salary of a manager on that date.

the PHRA.

An equitable exception to these filing requirements, called the continuing violations theory, allows a plaintiff to "pursue a Title VII claim for discriminatory conduct that began prior to the filing period if she can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." West, 45 F.3d at 754. Once a plaintiff has demonstrated a continuing violation, he or she may recover for discriminatory conduct that occurred prior to the filing period and offer evidence of all events that constitute the violation. Id. at 755. If the plaintiff does not establish a continuing violation, he or she may recover only for the conduct within the applicable statutory period.

The crux of FedEx's argument is that Ms. Cole's claim does not meet the requirements necessary to trigger the exception provided by the continuing violations theory, and this Court agrees. In order to successfully present a claim under the continuing violations theory, a plaintiff must demonstrate that: (1) at least one discriminatory act occurred within the actual filing period and (2) the discrimination did not consist of "isolated, intermittent acts of discrimination," but instead of a "persistent, on-going pattern." Id. at 754-55.

The Third Circuit has enumerated factors relevant to determining whether or not a continuing violation exists, including the subject matter of the various incidents, the frequency with which they occurred, and "their degree of permanence." Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997). Permanence refers to whether an incident should trigger an employee's awareness of and duty to assert his or her rights and whether the consequences of the act persist without being dependent upon a continuing intent to discriminate. Id. The degree of permanence is of primary importance in the analysis. See Cowell v. Palmer Township, 263

F.3d 286, 292 (3d Cir. 2001).

Ms. Cole stated she and Mr. Vargas socialized together before the 2003 incident but then stopped the socialization. Plaintiff's contentions concerning his verbal communications to her between the 2003 and 2005 incidents have been set forth above, but it is undisputed that Plaintiff never reported any of the incidents, after the 2003 incident to FedEx management. Ms. Cole's deposition testimony indicates that she understood the unwelcome kiss to be actionable at the time. Although Ms. Cole reported the kiss to her employer, she did not take legal action even though she was aware she could. Ms. Cole's failure to take legal action at the time, viewed alongside the absence of reported incidents between the 2003 unwelcome kiss and March 26, 2005, leads the court to conclude that the continuing violations theory does not apply to the instant case. "[T]he continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims. . . . Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." Cowell, 263 F.3d at 295. The alleged unwelcome kiss of 2003 can not be considered as part of Ms. Cole's Title VII claim.[6]

### C.    Retaliation Claim - Post 3/26/05

The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is the appropriate analysis for summary judgment motions in cases alleging employment retaliation.[7] Plaintiff must first prove by a preponderance of the evidence that a

---

[6] The Court, however, is reserving decision as to whether the alleged harassment of 2003 would be admissible at trial under a rule of evidence such as Federal Rule of Evidence 404(b).

[7] The McDonnell Douglas framework also applies to Plaintiff's claims under the PHRA. See Tomasso v. Boeing Co., 445 F.3d 702, 704 (3d Cir. 2006).

prima facie case of unlawful discrimination or retaliation exists.  See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).

To establish a prima facie case of retaliation a plaintiff must show:  (1) that she engaged in protected activity; (2) that she suffered a materially adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal citations omitted).  An employer's action or retaliation is considered materially adverse if it would dissuade a reasonable person from making or supporting a charge of discrimination.  Id. at 341.[8] Ms. Cole asserts that she was retaliated against both by FedEx and by her colleagues at FedEx. The Court addresses each claim in turn and finds that in both cases, the alleged retaliatory acts were not significant enough to qualify as materially adverse.  Ms. Cole does not establish a prima facie case of retaliation,[9] and summary judgment will be granted as to the retaliation claims.

     **1.**     **FedEx**

Ms. Cole argues that FedEx retaliated against her by meeting with her to discuss her tardiness and absences and by placing a note in her file to document the meeting.  Ms. Cole

---

[8] The defendant satisfies its burden of production by introducing evidence, which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  Fuentes, 32 F.3d at 763.  The defendant need not prove that the tendered reason actually motivated its behavior because the ultimate burden of proving intentional discrimination always rests with the plaintiff.  Id.

[9] Reporting Mr. Vargas' alleged assault certainly qualifies as a protected activity and satisfies the first prong of the claim.  Since the Court concludes that the plaintiff's claim falls short on the second element of the prima facie case, it does not address whether Ms. Cole's allegations satisfy the third element, of causal connection.

originally contended that the meeting and note constituted a disciplinary action; however, Ms. Cole has not submitted evidence indicating that the meeting and note rose to the level of a disciplinary actions.[10] At the August 21, 2008 oral argument, FedEx in fact stated that the note and meeting were not disciplinary action. Ms. Cole did not dispute FedEx's position but instead argued that with the meeting and note, FedEx was laying the foundation for disciplinary action. There is no evidence in the record before the Court of an actual disciplinary action, and the meeting and note do not qualify, by themselves, as a materially adverse employment action. Ms. Cole therefore does not establish the second requirement of a prima facie case of retaliation, and summary judgment will be granted on her retaliation claim to the extent it is based on disciplinary action by FedEx.

   2.   **Co-workers**

FedEx could be liable under Title VII for retaliatory harassment perpetrated by Ms. Cole's co-workers only if Ms. Cole satisfies the prima facie case and shows that FedEx is liable for the co-workers' conduct through traditional agency principles. Moore, 461 F.3d at 349. "An employer is not always vicariously liable for a hostile work environment." Kunin v. Sears Roebuck and Co., 175 F.3d 289, 294 (3d Cir. 1999). "There is a basis for liability when supervisors 'knew or should have known about the [co-worker] harassment, but failed to take prompt and adequate remedial action' to stop the abuse." Moore, 461 F.3d at 349 (quoting Jensen v. Potter, 435 F.3d 444, 453 (3d Cir. 2006)).

---

[10] The note reads: "Beth, you are below satisfactory in attendance and punctuality. Over the past 12 months you have 14 sick days and 12 days late. Any further occurrence of either could result in disciplinary actions. Please understand that your attendance performance must improve immediately. Thank you."

Moreover, for an employer to be held liable, the co-worker retaliation at issue must be significant; in other words, a plaintiff must establish that the retaliatory acts qualify as "materially adverse," to satisfy the second element of the prima facie case, discussed above. The Supreme Court has emphasized that in evaluating the nature of retaliation, "it is important to separate significant from trivial harms." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Title VII "does not set forth 'a general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998)).

The standard for evaluating retaliation claims is an objective standard. Id. at 68-69. The objective standard "avoids the discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." Id. Retaliation is considered materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68.

Although the court does consider plaintiff's subjective beliefs, the test is an objective one. The court cannot allow plaintiff's subjective beliefs to overcome an objective view of the totality of evidence in the record, viewed in the light most favorable to plaintiff. Ms. Cole's evidence of co-worker retaliation consists of: 1) several of Ms. Cole's colleagues ignoring her; 2) one of Ms. Cole's co-workers (a former friend) ignoring her, being rude to her, slamming a door, and refusing to provide her assistance; 3) one colleague complaining to her about leaving a box in the wrong place; 4) a male co-worker stating that if Ms. Cole reported him for sexual harassment, she would be sorry;[11] and 5) a customer asking Ms. Cole if she slept with all of her customers.

---

[11] The deposition testimony before the Court does not indicate that this statement was made to Ms. Cole but that a different co-worker told her it had been said.

There is no evidence that FedEx has any responsibility for this latter statement.

These incidents were understandably upsetting to Ms. Cole. However, viewing the totality of circumstances in the light most favorable to her, they do not, under existing legal principles, rise to the level of retaliation for which one can obtain relief.[12]  See Miller v. ALCOA, 679 F.Supp. 495, 505 (W.D. Pa. 1988), aff'd., 856 F.2d 184 (3d Cir.1988) (finding that the "snubbing" by the plaintiff's co-workers did not constitute retaliation under Title VII).  In the instant case, Ms. Cole has not submitted evidence of more than snubbing by colleagues. Although Ms. Cole generally alleges that her colleagues threatened her, the only statement in the record that comes close to constituting a threat was the male colleague's statement that if Ms. Cole filed charges against him, she would be sorry.  There is no evidence that this statement was made in retaliation against Ms. Cole because there is no evidence that this statement was made directly to Ms. Cole.

"When one employee makes a charge under Title VII against another, some strain on workplace relationships is inevitable.  Sides will be chosen, lines will be drawn, and those who were once the whistleblower's friends may not be so friendly anymore.  But what the statute proscribes is retaliation, not loyalty to an accused coworker or a desire to avoid entanglement in workplace controversy."  Jensen v. Potter, 435 F.3d 444, 452 (3d Cir. 2006) (internal citations omitted) (abrogated in part on other grounds by Burlington Northern and Santa Fe Ry. Co. v.

---

[12] These incidents also fail to support a claim for constructive discharge. "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign. A hostile work environment will not always support a finding of constructive discharge. To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 n. 4 (3d Cir. 2006) (internal citations omitted).

White, 548 U.S. 53 (2006)).  See also the leading case of Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), discussing how a court should properly weigh a plaintiff's claims to determine whether the employee has been a victim of a hostile work environment.

The record does not contain evidence that Ms. Cole experienced the kind of co-worker retaliation that would dissuade a reasonable worker from making or supporting a charge of discrimination.  The evidence is not sufficient to have required Defendant to take some action.  The Court will grant summary judgment on the co-worker retaliation claim.[13]

     **D.**     **Consent Decree**

Plaintiff contends that the consent decree entered on April 15, 2005 between the EEOC and FedEx in a separate civil action in the Middle District of Pennsylvania, Civil Action No. 02-1194, applies to the Lancaster Station where plaintiff worked and was not violated by defendant's conduct towards plaintiff.  In response to the Court's August 25, 2008 Order, FedEx has submitted the affidavit of Mr. Dick Schmidt, a former Manager of Human Resources in the Eastern Division ("Schmidt Affidavit" Doc. No. 67).  The Schmidt Affidavit declares that the consent decree "does not cover or in any way pertain to" the Lancaster Station where Mr. Vargas and Ms. Cole worked, and it has not been contradicted by Plaintiff.  The Court therefore does not take the consent decree into consideration as to summary judgment.

---

[13] The fact that summary judgment will be granted on the post 3/36/05 retaliation claim, however, does not require that evidence about events after March 26, 2005 will be inadmissible at trial.  Such evidence may very well be admissible as to damages or for other purposes.  Even if the Court would find Plaintiff's evidence sufficient for a prima facie case, the record would show that FedEx had independent nondiscriminatory reasons for terminating Plaintiff after her one year medical leave, and the Court would find that Plaintiff has no evidence that FedEx's actions were pretextual.

**V.    State Law Claims**

Ms. Cole's state law claims (intentional/negligent infliction of emotional distress, negligent supervision, and assault/battery) are time-barred by the terms of a written agreement she entered into with FedEx. The relevant language reads as follows:

> To the extent the law allows an employee to bring legal action against FedEx Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

Def.'s Br., 30.

FedEx argues that this language creates a contractual limitations period that bars Ms. Cole's state common law claims as untimely. FedEx does not seek to enforce this contractual statute of limitations with respect to Ms. Cole's Title VII claim or the PHRA claim.

Plaintiff does not dispute the existence of the language above. However, Ms. Cole contends that the relevant document, entitled "Employment Agreement," does not constitute an employment contract. Further, Ms. Cole argues that the reasoning of Grosso v. Federal Express Corp., 467 F. Supp.2d 449 (E.D. Pa. 2006) (finding that FedEx's six-month limitations clause was unenforceable under the Family Medical Leave Act) should apply to the present case. The parties addressed the applicability of Grosso at the August 21, 2008 oral argument, and the Court concludes that the Grosso holding should be limited to claims under the Family Medical Leave Act ("FMLA") and the Employee Retirement Income Security Act ("ERISA"). Grosso only addresses three claims: a claim of retaliation under FMLA, a claim of interference under FMLA, and a claim of retaliation under Section 510 of ERISA. Grosso, 467 F. Supp.2d at 466. Most of the Grosso analysis pertains to the FMLA, and there is no reason to find that the holding extends

to state causes of action.

Generally, absent a controlling statute to the contrary, a contractual provision may validly limit the time for bringing an action to a period shorter than that set by the general statute of limitations, provided that the contractual provision is reasonable. Order of United Commercial Travelers of Am. v. Wolfe, 331 U.S. 586, 608 (1947); Missouri, Kansas & Texas R.R. Co. v. Harriman Bros., 227 U.S. 657, 672 (1913) ("The policy of statutes of limitations is to encourage promptness in the bringing of actions. . . . [T]here is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court.") In addition, Pennsylvania statutory law provides that parties may agree to a limitations period shorter than that otherwise applicable, provided that the period is "not manifestly unreasonable." 42 PA. CONS. STAT. ANN. § 5501(a).

After a review of the existing case law, including the cases submitted by the parties in response to this Court's order of August 25, 2008, the Court finds that the six-month contractual limitations period in FedEx's agreement with Ms. Cole is reasonable and bars Ms. Cole from pursuing her state common law claims in this Court. Ms. Cole does not argue that a six-month limitations period is unreasonable, and although the Third Circuit has yet to rule on the specific matter, most courts to address the issue have found that a six-month contractual limitations period in an employment agreement is indeed reasonable and bars an employee's state law claims against his/her employer. See e.g., Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1044 (9th Cir. 2001) (finding six-month contractual limitations provision enforceable to bar employee's wrongful termination claim as untimely); Myers v. Western-Southern Life Ins. Co.,

849 F.2d 259 (6th Cir. 1988) (upholding six-month contractual limitations period and finding that it barred state law employment claims); Johnson v. DaimlerChrysler Corp., 2003 WL 1089394 (D. Del. 2003) (finding six-month contractual limitations period to be reasonable and to bar state common law claims).

It is important to note that many courts have found that a six-month contractual limitations period does not bar claims pursuant to federal statutes such as Title VII or the ADA. See, e.g., O'Phelan v. Federal Express Corp., 2005 WL 2387647, *4 (N.D. Ill. Sep. 27, 2005) (determining that FedEx's six-month contractual limitations period was unenforceable as to a Title VII claim); Mabry v. Western & Southern Life Ins. Co., 2005 WL 1167002, *6 (M.D.N.C. Apr. 19, 2005) (finding that a six-month contractual limitations period was unenforceable as to an ADA claim); Lewis v. Harper Hosp., 241 F.Supp.2d 769 (E.D. Mich. 2002) (finding that a six-month contractual limitations period is enforceable to bar state law claims but refusing to enforce it as a Title VII claim). However, FedEx does not argue that the six-month limitations period would bar Ms. Cole's Title VII claim.

Since Ms. Cole filed her administrative complaint with the PHRC and the EEOC on June 1, 2005, the Court concludes that she knew of her cause of action by that date, at the latest. Given the limitations period in her agreement with FedEx, Ms. Cole was obligated to start suit on her state common law claims by December 1, 2005. Ms. Cole filed the Complaint in this case on August 7, 2006, and the state law causes of action contained therein are thus untimely.[14] The

---

[14] The court notes potential prejudice and arguably undue complexity to employees, arising out of the interplay between a contractual six-month limitations period and the requirement that an employee receive a right-to-sue letter from the EEOC before proceeding with a Title VII claim in federal court. Such concern, however, does not override the well-established principles that parties may agree to specific limitations periods and that valid agreements

Court will grant summary judgment as to Ms. Cole's claims of intentional/negligent infliction of emotional distress, negligent supervision, and assault/battery.

## VI. Conclusion

For the reasons stated above, the court 1) denies summary judgment as to the Title VII and PHRA claim for a hostile work environment due to Mr. Vargas's sexual assault of May 26, 2005; 2) grants summary judgment as to the Title VII and PHRA claim for retaliation; and 3) grants summary judgment as to the state law claims of intentional/negligent infliction of emotional distress, negligent supervision, and assault/battery. An appropriate order follows.

---

between parties should be enforced.

If an employee agrees to a six-month limitations period for suits against his/her employer, the employee may be obligated to file state law claims before receiving a right-to-sue letter. The employee should also consider filing the suit in its entirety and concurrently moving for a stay pending the resolution of the EEOC charge and the receipt of a right-to-sue letter. See Taylor v. Western & Southern Life Ins. Co., 966 F.2d 1188, 1205-06 (7th Cir. 1992) (agreeing with the district court that plaintiff had the option of filing suit and moving for a stay pending receipt of a right-to-sue letter); Badgett v. Federal Express Corp., 378 F.Supp.2d 613, 625-26 (M.D.N.C. 2005) ("The very nature of the law is that causes of action carry with them different limitations periods. . . . Plaintiff could have initially filed [some claims] and then added her Title VII claim later. Alternatively, Plaintiff could have filed suit and asked the court for a stay pending the outcome of her EEOC charge.") However, these issues are not presented in this case.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH A. COLE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FEDERAL EXPRESS CORP., | : | NO. 06-3485 |
| | : | |
| Defendant. | : | |

## **ORDER**

_____And NOW, this 19 day of September, 2008, for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. No. 36) is GRANTED in part and DENIED in part. The Court sets November 12, 2008 for the trial of this case. The Court will have a pretrial conference by telephone with counsel on Monday, October 27, 2008 at 4:30 p.m.

BY THE COURT:

/s/ Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

O:\Kathy\06-3485 Cole v. FedEx\Memo re MSJ.wpd

-20-